# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Lawrence K. Connor,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>JoAnne B. Barnhart, Commissioner of Social Security,<br><br>　　　　　　　Defendant. | No. CIV 04-657-TUC-CKJ (JM)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Lawrence K. Connor brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security. This Social Security Appeal has been referred to the United States Magistrate Judge pursuant to Local Rule – Civil 72.2(a)(10) of the Rules of Practice of this Court. Based on the pleadings of the parties and the record submitted to the Court, the Magistrate Judge recommends that the District Court, after its independent review, grant Plaintiff's Motion for Summary Judgment [Doc. No. 12] and deny Defendant's Cross-Motion for Summary Judgment [Doc. No. 14].

**I. Procedural Background**

On November 15, 2000, Plaintiff applied for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382, and filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423 (Tr. 70-72), alleging disability since May 30, 1999, due to blackouts, facial and back pain. (Tr. 34). His claims were denied initially and on review. (Tr. 34). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 34). The

1  hearing was held on December 17, 2001, and Plaintiff's claims were denied in a decision by
2  the ALJ dated January 25, 2002. (Tr. 34-39 (hearing transcript)). Plaintiff did not request
3  review of the hearing decision by the Appeals Council.
4        On August 27, 2002, Plaintiff again applied for SSI (Tr. 238-240) and DIB (Tr. 70-
5  72), this time alleging disability since July 8, 1999 (Tr. 70 & 238) due to blackouts, seizures,
6  headaches, and face, back and leg pain. (Tr. 82). His applications were denied initially (Tr.
7  43, 45-48 (DIB); Tr. 241, 242-246 (SSI)), and upon reconsideration (Tr. 44, 51-54 (DIB); Tr.
8  247, 248-251 (SSI)). Plaintiff then requested a hearing before an ALJ. (Tr. 58). The hearing
9  was held on February 11, 2004, and Plaintiff's claims were denied in a decision by the ALJ
10 dated May 27, 2004. (Tr. 252-306 (hearing transcript); 15-23 (decision)). Plaintiff
11 subsequently requested review of the hearing decision by the Appeals Council. (Tr. 7-11).
12 On October 7, 2004, the Appeals Council denied Plaintiff's request for review. (Tr. 4-6).
13 Accordingly, the ALJ's decision became the final decision of the Commissioner of Social
14 Security. (Tr. 4). Plaintiff subsequently filed a complaint in this Court on December 1,
15 2004, seeking judicial review of the ALJ's decision.

16 **II. Record on Appeal**
17     **A. Plaintiff's Testimony**
18       At the February 11, 2004, hearing before the ALJ, Plaintiff was represented and
19 questioned by counsel. Plaintiff testified that he was born on November 6, 1967. (Tr. 258).
20 By way of education, Plaintiff completed high school and earned an associates degree in
21 electronics. (Tr. 259). He last worked as a cargo handler at Tucson International Airport.
22 (Tr. 275). Prior to that job, he worked installing and maintaining burglar alarms and other
23 electronic equipment. (Tr. 276).
24       Plaintiff has been unable to work since May of 1998 due to a head and back injury
25 that have caused him to experience blurry vision, memory problems, constant pain in his
26 back and face, and depression. (Tr. 259-260). Until that time, Plaintiff was very active and
27 was able to work twelve-hour days, seven days a week. (Tr. 261). He indicates that he
28

- 2 -

suffers from seizures that cause him to black-out and vomit. (Tr. 264). He also experiences facial pain "24/7." (Tr. 292). He takes medication for pain, a thyroid condition, seizures, and for sleeping. (Tr. 265). Plaintiff's current treating physician is Dr. Charles Kaplan (Tr. 259). He also went to COPE Behavioral Health, but quit going in November of 2001. (Tr. 278-79).

Plaintiff's father also testified on his behalf, informing the ALJ that before 1998, his son did not have these problems. (Tr. 295). Plaintiff's father said his son now screams "sometimes four or five, six seven times a day . . ." for 15 to 30 minutes. (Tr. 295-96). He also keeps a schedule of Plaintiff's appointments because there is "something wrong" with his son and "[h]e can't remember anything or what's happening." (Tr. 296-97). He takes the Plaintiff to his appointments and also for grocery shopping. (Tr. 298).

**B.  ALJ's Findings and Decision**

After the hearing and after considering the entire record, the ALJ found that the medical evidence established that the Plaintiff has these severe, medically determinable impairments: a history of a depressive disorder, chronic back and leg pain and a seizure disorder. (Tr. 22) However, he concluded that these impairments were not severe and also that he had "failed to show the necessary 'changed circumstances' in order to rebut the presumption of continuing nondisability . . . ." (Tr. 22).

Based on these findings, the ALJ reached the following decision:

> It is the decision of the Administrative Law Judge that, based on the applications protectively filed on July 12, 2002, the claimant is not entitled to a period of disability, Disability Insurance Benefits, and not eligible for Supplemental Security Income payments under Sections 216(i), 223, 1602, and 1614(a)(3)(A) respectively, of the Social Security Act.

(Tr 22-23).

**III.  Standard of Review**

A district court's review of a disability determination is limited, and a final administrative decision can be revised "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation and internal quotations omitted). "Substantial evidence means such relevant

- 3 -

1  evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan
2  v. Commissioner of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Vertigan v.
3  Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). It consists of "more than a mere scintilla but less
4  than a preponderance." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999); *Young v.
5  Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990).

6  "In determining whether the Commissioner's findings are supported by substantial
7  evidence, [this Court] must review the administrative record as a whole, weighing both the
8  evidence that supports and the evidence that detracts from the Commissioner's conclusion."
9  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Aukland v. Massanari*, 257
10 F.2d 1033, 1035 (9th Cir. 2001). However, the ALJ's decision must be upheld if the evidence
11 is reasonably susceptible to more than one rational interpretation, *Allen v. Secretary of Health
12 and Human Services*, 726 F.2d 1470, 1473 (9th Cir. 1984), and the Court cannot substitute
13 its judgment for that of the Commissioner. *Reddick*, 157 F.3d at 720-21.

14 The claimant is "disabled" for the purpose of receiving benefits under the Act if he is
15 unable to engage in any substantial gainful activity due to an impairment which has lasted,
16 or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §
17 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a
18 prima facie case of disability." *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), cert.
19 denied, 517 U.S. 1122 (1996); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).

20 **IV. Discussion**

21 Plaintiff claims that the ALJ should be reversed and benefits awarded for several
22 reasons. First, he contends that the ALJ improperly discounted his treating doctor's
23 assessment of his condition. Second, Plaintiff argues that the ALJ also improperly
24 discounted other medical evidence in the record that supported his claim. Third, Plaintiff
25 claims that the ALJ erroneously found that he was not credible. Finally, Plaintiff claims that
26 the ALJ improperly discounted the testimony of his father.

27 If the issues that a claimant presents are the same issues form a previous claim, the

28

1    ALJ must follow the doctrine of *res judicata*. "The claimant, in order to overcome the
2    presumption of continuing nondisability arising from the first administrative law judge's
3    finding of nondisability, must prove 'changed circumstances' indicating a greater disability."
4    *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). It is the claimant's burden to
5    demonstrate that there is new information which shows a disability, otherwise the previous
6    judgment will be used by the ALJ of the next claim. *Lyle v. Secretary of Health and Human*
7    *Services*, 700 F.2d 566, 568 (9th Cir. 1983).

8          Regulations promulgated by the Commissioner establish a five-step sequential
9    evaluation process to be followed by the ALJ in a disability case. *See* 20 C.F.R. § 404.1520.
10   At step one of the process, the ALJ must determine whether the claimant is currently engaged
11   in substantial gainful activity; if so, a finding of non-disability is made and the claim is
12   denied. 20 C.F.R. § 404.1520(b). When the claimant is not currently engaged in substantial
13   gainful activity, the ALJ, in step two, must determine whether the claimant has a severe
14   impairment or combination of impairments significantly limiting him from performing basic
15   work activities; if not, a finding of non-disability is made and the claim is denied. 20 C.F.R.
16   § 404.1520(c). A severe impairment or combination of impairments exists when there is
17   more than a minimal effect on an individual's ability to do basic work activities. 20 C.F.R.
18   § 404.1521(a); *Smolen*, 80 F.3d at 1290. Basic work activities are "the abilities and aptitudes
19   necessary to do most jobs," including physical functions such as walking, standing, sitting,
20   lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing,
21   hearing and speaking, understanding, remembering and carrying out simple instructions, use
22   of judgment, responding appropriately to supervision, co-workers and usual work situations,
23   and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

24         At the third step, the ALJ must compare the claimant's impairment to those in the
25   Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or
26   equals an impairment in the Listing, disability is conclusively presumed and benefits
27   awarded. 20 C.F.R. § 404.1520(d). When the claimant's impairment does not meet or equal
28

1 an impairment in the Listing, in the fourth step, the ALJ must determine whether the claimant
2 has sufficient "residual functional capacity" despite the impairment or various limitations to
3 perform her past work; if so, a finding of non-disability is made and the claim is denied. 20
4 C.F.R. § 404.1520(e). When the claimant shows an inability to perform past relevant work,
5 a prima facie case of disability is established and, in step five, "the burden shifts to the
6 Commissioner to show that the claimant can perform some other work that exists in
7 'significant numbers' in the national economy, taking into consideration the claimant's
8 residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1520(f).

### A. ALJ's Assessment of Plaintiff's Medical Evidence

Plaintiff argues that the ALJ wrongly rejected the opinions of Dr. Grossman, Dr. Caffrey and Dr. Kaplan. Rather than categorize the evaluation by physician, however, it is more effective to analyze the ALJ's decision by separating her evaluations of Plaintiff's physical and psychological condition.

Turning first to Plaintiff's physical condition, the record reflects that Dr. Kaplan is his treating physician. As such, his opinion must be given deference, but is "not necessarily conclusive as to either the [Plaintiff's] physical condition or the ultimate issue of disability." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). While not bound by the opinions of the claimant's treating physician on the ultimate issue of disability, the ALJ cannot reject the uncontroverted opinion of a claimant's treating physician on the ultimate issue of disability "'without presenting clear and convincing reasons for doing so.'" *Reddick*, 157 F.3d at 725 (quoting *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)). However, when the opinion of another doctor contradicts the treating physician's opinion, "the Secretary can disregard the latter only by setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)) (internal quotations omitted). In making this determination, it is the Court's duty to "review the administrative record as a whole, weighing both the evidence that

1  supports and the evidence that detracts from the Commissioner's conclusion." *Reddick*, 157
2  F.3d at 720; *see also Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001).

3        Here, Dr. Kaplan reported in a note dated November 30, 2003, that Plaintiff was "fully
4  disabled due to neuropathy" (Tr. 236), and opined in a DES Medical Statement that Plaintiff
5  suffered from neuropathy "which prevented him from performing any substantial gainful
6  employment which was expected to last more than twelve months." (Tr. 235).  Relying on
7  *Chavez*, the ALJ rejected Dr. Kaplan's opinion because Plaintiff failed to overcome the
8  presumption of continuing non-disability. (Tr. 22).  In reaching this conclusion, the ALJ
9  relied on the lack of objective evidence in the record to support Plaintiff's claims.  The ALJ
10 noted that Plaintiff had received very little treatment and that "diagnostic testing has not
11 revealed any abnormalities." (Tr. 18).  This conclusion was supported by the ALJ's review
12 of the record.  Plaintiff complained of seizures, but there was no evidence that any medical
13 professional had observed or treated Plaintiff for the seizure activity. (Tr. 18).  Plaintiff also
14 alleged that he was suffering from severe back pain.  However, the ALJ summarized
15 Plaintiff's emergency room records which provided support for the rejection of this claim.
16 (Tr. 18).  For example, magnetic resonance imaging revealed only mild multiple compression
17 fractures without evidence of bony retropulsion and computer tomography revealed no
18 abnormalities. (Tr. 18).  These findings were consistent with Dr. Grossman's diagnostic
19 impression that, while Plaintiff had significant reduction of function in his lumbar spine,
20 there were no neurological abnormalities or evidence of radiculopathy. (Tr. 195).  While
21 other interpretations of the record are conceivable, the ALJ, who is charged with resolving
22 conflicts between treating and examining physicians, *Sprague v. Bowen*, 812 F.2d 1226, 1230
23 (9th Cri. 1987), cited the required legitimate reasons based on substantial evidence in the
24 record for rejecting Dr. Kaplan's opinion.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.
25 1987).

26       Turning to Plaintiff's psychiatric condition, however, the ALJ's decision cannot be
27 upheld.  In her decision, the ALJ noted that Plaintiff's counsel contended that the claimant

28       - 7 -

1  had shown changed circumstances "due to the existence of a mental impairment and
2  cognitive limitation which were not before [the ALJ] at the prior proceeding." (Tr. 17). The
3  ALJ found this contention without merit:

> The claimant was examined by John LaWall, M.D. a physician Board-certified in psychiatry and neurology . . . on November 19, 2001. Dr. LaWall was unable to diagnose any psychiatric impairment and stated that the claimant met the psychiatric criteria for underlying suspicion of malingering.

7  (Tr. 17). The ALJ then proceeded to conclude that Plaintiff had presented "no persuasive
8  evidence" that established a mental impairment or cognitive limitation which was not
9  considered at the first hearing. (*Id.*). This conclusion is contrary to the record.

10  As noted by the ALJ (Tr. 19), Dr. Grossman, who saw Plaintiff on February 28, 2003
11  at the request of the Department of Economic Security, concluded that the Plaintiff suffered
12  from psychological problems. In fact, the doctor diagnosed Plaintiff as having a reduction
13  of cognitive functions, difficulty organizing his thoughts, and difficulty with his memory.
14  (Tr. 195). Dr. Grossman even noted that Plaintiff "really needs" to be seen by a psychologist
15  or psychiatrist. (Tr. 194 & 195). Dr. Grossman made no mention of possible deception or
16  malingering on the part of the Plaintiff.

17  Again at the request of DES, Plaintiff subsequently presented to Jill Caffrey, Ph.D.,
18  a neuropsychologist, for evaluation. Dr. Caffrey, who saw Plaintiff on Aril 17, 2003,
19  expressed some doubt about the validity of Plaintiff's self-reported physical maladies, stating
20  that it was not clear that it was necessary from a medical standpoint that Plaintiff stayed in
21  bed nearly all the time. (Tr. 202). She did not, however, question the seriousness of his
22  psychological condition. Dr. Caffrey reported that Plaintiff's mood was "dysphoric," his
23  affect was "flat and restricted with minimal expressive output," and noted that he endured
24  "symptoms consistent with posttraumatic stress disorder . . . ." (Tr. 202). Her diagnosis
25  reflected that Plaintiff suffered a "[m]ajor depressive order, recurrent," and that posttraumatic
26  stress disorder could not be ruled out. (Tr. 202). She concluded her diagnosis with the report
27  that Plaintiff "does appear to have some psychological distress." (Tr. 202).

Despite these nearly uniform opinions that Plaintiff's psychiatric condition was serious, which was not the case according to Dr. Baum at the time of the first hearing, the ALJ nevertheless rejected Dr. Caffrey's opinions. The reasons for this, the ALJ explained, were that the doctor "appeared to rely on the subjective report of symptoms and limitation[s] provided by the claimant, and seemed to uncritically accept as true most, if not all of what the claimant reported." (Tr. 20). Dr. Caffrey's records do not lend support to this conclusion. The Plaintiff reported to Dr. Caffrey that he "stays in bed nearly all the time." (Tr. 202). She did not uncritically accept this report, stating that "it is not clear if this is necessary form a medical standpoint." (Tr. 202). Dr. Caffrey's report also establishes that she did not rely only on the Plaintiff's subjective report of symptoms. During her examination, she made behavioral observations that Plaintiff's "physical presentation was marginal," "[h]is mood was dysphoric," and "[h]is affect was flat with minimal expressive output." (Tr. 200). Dr. Caffrey also performed IQ testing of Plaintiff which disclosed he was "functioning in the Average to low average range." (Tr. 201). Thus, the ALJ's conclusion that Dr. Caffrey uncritically accepted and relied on Plaintiff's subjective reports of symptoms and limitations is not supported by the record.

The ALJ's opinion also understates the Plaintiff's limitations as described by Dr. Caffrey. In the Decision, the ALJ reports that Dr. Caffrey "concluded that the claimant had a **fair** ability to deal with the public, deal with work stresses, maintain attention/concentration, understand, remember and carry out complex job instructions, maintain personal appearance, relate predictably in social situations and demonstrate reliability." (Tr. 20 (emphasis added)). According to the definitions contained in the report, the term "fair" is used to describe defined an individual's ability as "seriously limited, but not precluded." (Tr. 204). The only lower category of ability is "none." (Tr. 204). As such, considered in the proper context, "fair" does not, as would typically be expected, connote an "average" or "pretty good" ability to function in the various categories identified in Dr. Caffrey's report. Accurately described, the Plaintiff is "seriously limited" in seven of the

- 9 -

fourteen work-related categories included in the report. (Tr. 204-205).

The foregoing establishes at a minimum that the Plaintiff proved "changed circumstances" sufficient to overcome the presumption of non-disability arising from the decision after his first claim for benefits. *See Chavez*, 844 F.2d at 693. However, because the ALJ found *Chavez* and the doctrine of res judicata applicable to the instant claim, the claim was never evaluated under the five-step process outlined in the regulations. As discussed above, the record reflects that the Plaintiff has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 404.1520(c).[1] As such, the ALJ must determine whether the claimant has sufficient "residual functional capacity" despite the impairment or various limitations to perform his past work. 20 C.F.R. § 404.1520(e). If he cannot, the Commissioner must establish that the Plaintiff can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1520(f).

### B.  Credibility Assessments

Determinations of a claimant's credibility are to be made by the Commissioner through the ALJ. *Talifson v. Secretary of HHS*, 554 F.Supp. 575, 580 (D.Mont. 1982). A reviewing court must give "great deference to credibility determinations made by administrative law judges." *Silver v. United States Postal Service*, 951 F.2d 1033, 1042 (9th Cir.1991). A finding that a claimant is less than credible must have some support in the record. *Talifson*, 554 F.Supp. at 580. However, these findings must be sufficiently specific to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-56 (9th Cir. 1991) (citation omitted).

---

[1] A severe impairment or combination of impairments exists when there is more than a minimal effect on an individual's ability to do basic work activities. 20 C.F.R. § 404.1521(a).

In the instant case, the ALJ's decision not to rely on Plaintiff's subjective complaints is supported by the record. Consistent with the ALJ's determination, the record reflects that even Dr. Caffrey questioned Plaintiffs subjective complaints about his physical condition. (Tr. 202). Dr. Caffrey's opinion, and that of the ALJ, is supported by the apparent overstatement by Plaintiff of his seizure disorder and that he was required to use morphine. (Tr. 21). Additionally, there is substantial evidence in the record that Plaintiff, despite his denial, use alcohol. (Tr. 167, 186). As such, it was entirely reasonable for the ALJ to discount Plaintiff's testimony regarding his condition and to refuse to rely on his self-reported history as a basis for the decision. The better course was to rely on the records of his physicians, particularly those of Dr. Caffrey. The Magistrate Judge finds that the ALJ's credibility determination is supported by the record and that Plaintiff's testimony was not arbitrarily discredited. This conclusion does not, however, impact on the necessity for remand of this claim for a complete evaluation in light of the discussion and conclusions regarding Plaintiff's psychiatric condition.

## V.     RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule 1.17(d)(2), Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge recommends that the District Court, after an independent review of the record, **GRANT** Plaintiff's Motion for Summary Judgment [Doc. No. 12] and **DENY** Defendant's Cross-Motion for Summary Judgment [Doc. No. 14], and **REMAND** this action for reconsideration by the ALJ consistent with this Report and Recommendation.

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure.

1  Thereafter, the parties have ten (10) days within which to file a response to the objections.
2  If any objections are filed, this action should be designated case number: **CV 04-657-TUC-**
3  **CKJ**. Failure to timely file objections to any factual or legal determination of the Magistrate
4  Judge may be considered a waiver of a party's right to *de novo* consideration of the issues.
5  *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 31st day of March, 2006.

*(signature)*
Jacqueline Marshall
United States Magistrate Judge

- 12 -